CASANUEVA, Judge,
Concurring.
I concur in the majority opinion. While the majority opinion properly observes that “the Former Husband’s argument is premature” when confronted with the potential remedy of incarceration as a contempt sanction, I write because it is likely that the issue will surface in the future. And a review of certain precedents may aid in a future resolution of a contempt issue.
The majority properly explains that the Illinois court’s order of contempt is based upon the Former Husband’s failure to comply with a property division award of a marital settlement agreement. But in Florida, “as a general proposition, property division awards may not be enforced by contempt.” Roth v. Roth, 973 So.2d 580, 591 (Fla. 2d DCA 2008). This is because the Florida Constitution bars imprisonment for debt. Id. “No person shall be imprisoned for debt, except in cases of fraud.” Art. 1, § 11, Fla. Const.
Thus, the issue may arise whether the trial court in Florida may enforce the post-dissolution order by utilizing remedies afforded under Illinois law, the state of origin of the order. An enforcement request of this nature will likely trigger a consideration of the reach of the Full Faith and Credit Clause of the Constitution of the United States.
The Full Faith and Credit Clause
“Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State.” Art. IV, § 1, U.S. Const.
The animating purpose of the full faith and credit command ... “was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.”
Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 232, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (quoting Milwaukee Cnty. v. M.E. White Co., 296 U.S. 268, 277, 56 S.Ct. 229, 80 L.Ed. 220 (1935)). “The *1227 Full Faith and Credit Clause does require each State to give effect to official acts of other States. A judgment entered in one State must be respected in another provided that the first State had jurisdiction over the parties and the subject matter.” Nevada v. Hall, 440 U.S. 410, 421, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).
In the Full Faith and Credit context, if the first state had jurisdiction over the parties and the subject matter, “the validity of the claim on which the foreign judgment was entered is not open to inquiry. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).” M & R Invs. Co. v. Hacker, 511 So.2d 1099, 1101 (Fla. 5th DCA 1987) (quoting Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182, 183 (Fla.1983)). This is because “[a] foreign order of contempt is entitled to full faith and credit in Florida if it is valid in the state in which it was issued.” Roosa v. Roosa, 519 So.2d 1108, 1109 (Fla. 4th DCA 1988). To the extent that Florida must enforce the Illinois judgment of contempt, I agree with the majority.
However, I am of the view that with regard to enforcing the postdissolution order it would be error for a Florida court to utilize the Illinois remedy of contempt. My conclusion is based upon a review of the following authorities.
Full faith and credit ... does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law. See McElmoyle ex rel. Bailey v. Cohen, 13 Pet. 312, 325, 10 L.Ed. 177 (1839) (judgment may be enforced only as “laws [of enforcing forum] may permit”); see also Restatement (Second) of Conflict of Laws § 99 (1969) (“The local law of the forum determines the methods by which a judgment of another state is enforced.”).
Baker, 522 U.S. at 235, 118 S.Ct. 657 (footnote omitted). Further, “[t]he Full Faith and Credit Clause does not require a State to apply another State’s law in violation of its own legitimate public policy.” Hall, 440 U.S. at 422, 99 S.Ct. 1182 (footnote omitted). Florida’s public policy, as woven into our constitution, is not to imprison people for civil debts such as the one in this case. Accordingly, imprisonment is unavailable to the Florida trial court as a remedy to enforce this particular contempt order, whether or not that remedy is available in Illinois to enforce the same.
Holdings of Other Courts
A few other jurisdictions have ruled on similar cases. In Johnson v. Johnson, 196 S.C. 474, 13 S.E.2d 593 (1941), the Supreme Court of South Carolina determined how its courts should enforce a Florida alimony decree:
The effect of the full faith and credit clause of the Constitution is not primarily in issue here. We are considering only the method of collecting the judgment, and the procedure of enforcement to be followed is a matter exclusively for our Courts. We think that it cannot be seriously contended that a citizen of this State would in a contempt proceeding be placed in jail by our Courts because of his inability to pay a judgment of a foreign Court established here, when under similar circumstances in the enforcement of a domestic judgment for alimony we would not do so. The Florida decree is in force here solely for the purpose of enforcement through the equitable remedies afforded by our Courts of equity, and this being true, it occupies no higher position than a domestic judgment. If a Court of equity had no au *1228 thority to take cognizance of the altered financial condition of the parties, the matter of contempt proceedings and imprisonment upon failure to pay would be automatic. The fallacy inherent in plaintiffs argument is demonstrated when its reasoning is followed to its ultimate conclusion. If this contention should prevail then a husband in default as to alimony payments, and without funds, could be jailed for life merely because he lacked the means which would enable him to reach a distant jurisdiction and there seek the relief which the local Court deemed itself impotent to grant. Equity, pre-occupied with the administration of justice in the light of things as they are, must, in a case of this kind, look to realism and not to theory.
Id. at 595-96.
A North Carolina court has also weighed in on the issue of enforcement in domesticated judgments. In Sainz v. Sainz, 36 N.C.App. 744, 245 S.E.2d 372 (1978), the former wife brought an action asking the North Carolina trial court to adopt a New York judgment that ordered specific performance by the former husband. “[Her] express purpose in seeking the remedy of specific performance was to enable her to enforce the provisions of the separation agreement by civil contempt proceedings” which would not ordinarily be available in North Carolina. Id. at 374. The North Carolina trial court dismissed the case.
On appeal, the court held:
Under the full faith and credit clause a valid judgment for the payment of money must, as a general rule, be recognized and enforced in a sister state. Restatement 2d, Conflict of Laws ss 93 and 100 (1971). Likewise, a judgment in the nature of an equitable decree that orders the doing of an act is entitled to recognition to the same degree as another judgment. Id. s 102, Comment b. However, there is a distinction between recognition of a foreign judgment, on the one hand, and its enforcement, on the other hand....
Id. at 375.
The court determined that the New York decree should be enforced insofar as it adjudicated the rights and liabilities as between the parties, but that “[t]he methods by which a judgment of another state is enforced are determined by the local law of the forum.” Id. at 375. The court held that the “ ‘mere modes of execution provided by the laws of a state in which a judgment is rendered are not, by operation of the full faith and credit clause, obligatory upon the courts of another state in which the judgment is sought to be enforced[.]’ ” Id. (quoting Sistare v. Sistare, 218 U.S. 1, 26, 30 S.Ct. 682, 54 L.Ed. 905 (1910)). The court concluded that the remedy of specific performance was not available to the former wife in North Carolina. Id.
More recently, in Rosin v. Monken, 599 F.3d 574, 575 (7th Cir.2010), the Seventh Circuit Court of Appeals confronted an issue where Mr. Rosin entered a plea agreement to a misdemeanor sexual offense in New York. As part of the agreement, he was not required to register as a sexual offender. Mr. Rosin later moved to Illinois, where the State of Illinois required him to register as a sex offender. Mr. Rosin filed suit under 42 U.S.C. § 1983, alleging that the persons responsible for enforcing Illinois’ sex offender registration policies were not giving full faith and credit to the New York judgment. Id.
The Seventh Circuit applied the Full Faith and Credit Clause and held:
[I]t is a profound mistake to jump ... to the conclusion that New York can dictate the manner in which Illinois may *1229 protect its citizenry. Illinois’s recognition of the New York order does not carry with it an obligation that Illinois enforce that order in the manner which it apparently prescribes.
Id. at 576. Further, it stated that “[t]he Full Faith and Credit Clause was enacted to preclude the same matters’ being reliti-gated in different states as recalcitrant parties evade unfavorable judgments by moving elsewhere. It was never intended to allow one state to dictate the manner in which another state protects its populace.” Id. at 577.
These cases support a conclusion that the Full Faith and Credit Clause requires Florida to recognize the judgments of other states, but it does not require Florida to utilize the enforcement mechanisms of other states. This is especially so when the enforcement mechanisms of other states are against Florida’s legitimate domestic public policies. In this instance, full faith and credit does not subordinate Florida’s laws — prohibiting imprisonment for mere debt — to Illinois’ laws.